FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
10:50 am, Oct 22, 2021
JEFFREY P. COLWELL, CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.  _____

(To be supplied by the court)

_____Wendy S. Roberts_____, Plaintiff

v.

_____Verizon Wireless_____,

_____,

_____,

_____, Defendant(s).

(*List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section B. Do not include addresses here.*)

## EMPLOYMENT DISCRIMINATION COMPLAINT

### NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

## A.    PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address.  Failure to keep a current address on file with the court may result in dismissal of your case.*

**Wendy S. Roberts**

**1543 Aspenwood Lane**

**Longmont, CO 80504**

(Name and complete mailing address)

720-237-4572  whend201@gmail.com

(Telephone number and e-mail address)

## B.    DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint.  If more space is needed, use extra paper to provide the information requested.  The additional pages regarding defendants should be labeled "B.  DEFENDANT(S) INFORMATION."*

Defendant 1:

Verizon Wireless
 One Verizon Way, Basking Ridge New Jersey 07920

(Name and complete mailing address)

908-559-2001

(Telephone number and e-mail address if known)

Defendant 2: 

(Name and complete mailing address)

(Telephone number and e-mail address if known)

## C.    JURISDICTION

*Identify the statutory authority that allows the court to consider your claim(s): (check all that apply)*

____    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq.
(employment discrimination on the basis of race, color, religion, sex, or national origin)

___x___    Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101, et seq. (employment

2

discrimination on the basis of a disability)

\_\_\_\_    Age Discrimination in Employment Act, as amended, 29 U.S.C. §§ 621, et seq. (employment discrimination on the basis of age)

\_\_\_\_    Other: (*please specify*) _____

**D.    STATEMENT OF CLAIM(S)**

*State clearly and concisely every claim that you are asserting in this action and the specific facts that support each claim.  If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE:  _____    Disability Discrimination and Retaliation *additional pages include detailed statement of claims* _____

The conduct complained of in this claim involves the following: (*check all that apply*)

\_\_\_\_ failure to hire                    \_\_\_\_ different terms and conditions of employment

\_\_\_\_ failure to promote               \_x\_ failure to accommodate disability

\_\_\_\_ termination of employment        \_x\_\_ retaliation

\_\_\_\_ other: (*please specify*) _____

Defendant's conduct was discriminatory because it was based on the following: (*check all that apply*)

\_\_\_\_ race         \_\_\_\_ religion      \_\_\_\_ national origin       \_\_\_\_ age

\_\_\_\_ color        \_\_\_\_ sex           \_x\_ disability

Supporting facts:

Diagnosed with Multiple Sclerosis on 8/1/2016 (had been severely ill and went undiagnosed from 8/2015 until 8/1/2016)

I immediately informed my employer and then received a letter from my Neurologist Dr. Tamara Miller on August 22nd 2016 stating that I was diagnosed with Multiple Sclerosis on 8/1/16 and was under her care, they could reach out to her at 970-226-6111 if they had questions or concerns.

I applied for intermittent FMLA, and submitted my documentation proving that I had a disability that was covered by the ADA.

I was required to fill out multiple "workplace accommodation" forms and medical documentation by my doctor for each reasonable accommodation that I requested, from requesting a chair to sit, a mat to stand on atop concrete floors, a grabber to reach things off of high accessory walls, ability to remove my thick cotton hooded Verizon sweatshirt or wear appropriate fabrics to regulate my body temperature and my skin sensations as a result of my MS, not offered a solution to noise cancelling in the new warehouse style work environment although I was told to track the decibel levels for months and submit them to my managers.  I had requested an adjustment in how I processed information and was once again told I needed a form for a basic request.  I had already approved that I had a disability, and my claims were reasonable and multiple times I was told nothing could be addressed until I had a form filled out by my doctor before they would work with me on my requests.  They discriminated against me on a regular basis, and I was treated differently than "able bodied" employees by being forced to jump through hoops to get any accommodation to perform my work in a safe comfortable/environment for my ADA disability.  Employees without disabilities did not need to fill out paperwork, visit their doctors consistently on their days off, or defend themselves and educate others each day on why they needed a basic accommodation.  According to the law, failure by the employer to initiate or participate with me after receiving a request for a reasonable accommodation could result in liability for failure to provide a reasonable accommodation.  You can see the attached statement of claims for more detailed statement of facts.

**E.      ADMINISTRATIVE PROCEDURES**

Did you file a charge of discrimination against defendant(s) with the Equal Employment Opportunity Commission or any other federal or state agency? (*check one*)

      _x__ Yes  (***You must attach a copy of the administrative charge to this complaint***)

      ___ No

4

Have you received a notice of right to sue? (*check one*)

      <u> x   </u> Yes  (***You must attach a copy of the notice of right to sue to this complaint***)

      <u>   </u> No

## F.    REQUEST FOR RELIEF

*State the relief you are requesting or what you want the court to do.  If additional space is needed to identify the relief you are requesting, use extra paper to request relief.  Please indicate that additional paper is attached and label the additional pages regarding relief as "F. REQUEST FOR RELIEF."*

## G.    PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct.  *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Wendy S. Roberts
_____
  (Plaintiff's signature)

10/21/2021
_____
  (Date)

(Form Revised December 2017)

## D. Statement of Claims and Supporting Facts

It is important to make you aware of the type of employee I was while employed through Verizon Wireless.  I started my career in January of 2010 and was forced to quit in October of 2018 after not being reasonably accommodated for my ADA disability.  I won many awards and accolades as follows:

2018 Top Small Business Adds in the Region for First Half of 2018
2017 Winner's Circle Member Top 10% of Sales Reps
2017 District rank 3/75 Region rank 25/558
2016 Winner's Circle Member Top 10% of Sales Reps
2015 Winner's Circle Member Top 10% of Sales Reps
2014 Winner's Circle Member Top 10% of Sales Reps
2014 Nominated and completed West Area Pre-Leader Development Program
2013 Winner's Circle Member Top 10% of Sales Reps
2012 Leading Review – "Employee consistently exceeds job requirements above and beyond expectations"
2011 Selected as Credo Ambassador for Mountain Region – trip to Disneyland and trained at Disney
2011 Won 212 Degree President's Award for Top Sales Representative in Mountain Region

I also maintained the following percentages to quota:
• 2017 145.70% to quota
• 2016 183.28% to quota
• 2015 194.90% to quota - MS was prominent from August 2015 and was undiagnosed until August 2016
• 2014 159.20% to quota
• 2013 113% to quota
• 2012 156% to quota
• 2011 187% to quota

My income was as follows: 2013 $57,818.47, Income from 2014 $82,517.54, Income from 2015 $82,417.86, Income from 2016 $82,580.81, and Income from 2017 $61,897.91.
I started my career as a Customer Service Representative in the Stapleton location and was promoted to sales or what they later refer to as a Solutions Specialist within roughly 6 months.  I was then employed in the following store locations of Boulder, Westminster, Orchard, Sheridan, Boulder, and then back to Westminster.
What is MS
According to the Multiple Sclerosis Association of America, "Multiple Sclerosis (MS) is a disease of the central nervous system (CNS).  The CNS consists of the brain, optic nerves and spinal cord.  With MS, areas of the CNS become inflamed, damaging the protective covering (known as "myelin") that surrounds and insulates the nerves (known as "axons").  In addition to the myelin, over time, the axons and nerve cells (neurons) within the CNS may also become damaged.  The damage to the protective covering and also to the nerves disrupts the smooth flow of nerve impulses.  As a result, messages from the brain and spinal cord going to other parts of the body may be delayed and have trouble reaching their destination—causing the symptoms of

6

## D. Statement of Claims and Supporting Facts

MS.  There are nearly one million people in the United States that are currently living with MS.
There are major symptoms of MS and these categories from the Multiple Sclerosis Association
of America include (keep in mind each topic can have subsections and this list does not include
all symptoms that may occur in MS) "anxiety, balance, bladder dysfunction, bowel problems,
cognitive changes, depression, dizziness/vertigo, fatigue, mobility and walking issues, numbness,
pain, Pseudobulbar Affect, sexual dysfunction, sleep issues, speech difficulties, spasticity
(stiffness), swallowing disorders, tremor, visual disorders, and weakness."

Verizon Regularly communicated with Ms. Roberts about her request for accommodation and
ongoing needs.
According to the ADA "When an individual decides to request accommodation, the individual or
his/her representative must let the employer know that s/he needs ab adjustment or change at
work for a reason related to a medical condition.  To request accommodation an individual many
us "plain English and need not mention the ADA or use the phrase "reasonable accommodation."
Two examples listed Include A: An employee tells her supervisor, "I'm having trouble getting to
work at my scheduled starting time because of medical treatments I'm undergoing."  This is a
request for a reasonable accommodation.  Second example: An employee's spouse phones the
employees' supervisor Monday morning to inform her that the employee had a medical
emergency due to Multiple Sclerosis, needed to be hospitalized, and thus requires time off.  This
discussion constitutes a request for a reasonable accommodation.  I requested multiple
accommodations throughout my time at Verizon and was constantly required to fill out forms
and provide documents in writing.  According to the ADA law, according to the EEOC
Government Laws Enforcement Guidance Reasonable Accommodation and Undue Hardship
Under The American Disabilities Act.  According to the ADA law, reasonable accommodation
requests do not need to be in writing.  Individuals may request accommodations in conversation
or may use any other mode of communication. It states that the employer may ask the individual
to fill out a form or submit the request in written form, but the employer can not ignore the initial
request.  I was required by Verizon to submit written materials confirming that I have Multiple
Sclerosis which is covered by the ADA.  I needed to prove to Verizon that I had an ADA
disability and that I need reasonable accommodations.  That was completed with a doctor's letter
confirming that I have been diagnosed with Multiple Sclerosis on August 1st of 2016 (I suffered
a major MS attack in August of 2015 and it took me a year of testing to get diagnosed).  The law
states that "when a disability and or need for accommodation is not obvious, the individual for
reasonable documentation about his/her disability and functional limitations."  I made the
company aware of my diagnosis immediately following my diagnosis.  I submitted intermittent
FMLA paperwork outlining that my disability was permanent, and it was clear and evident to
management, co-workers, and customers that I was certainly ill and had finally found the answer
to my year-long sickness that I continued to work through in 2015 and 2016.  It was obvious I
had a disability covered by the ADA and documentation was provided on multiple occasions.
The law does state the reasonable documentation was permitted by my company if it was not
obvious and that "Reasonable documentation means that the employer may require only the
documentation that is needed to establish that person has an ADA disability, and that the
disability necessitates a reasonable accommodation," according to the EEOC government law on
reasonable accommodations.  I made multiple requests for accommodations verbally and was

## D. Statement of Claims and Supporting Facts

required to submit the requests in writing and to provide doctors notes again and again.  My original requests were to work four ten hour days due to my leg issues and fatigue.  I can have trouble driving at times and the four ten hour days meant one less day of driving for me (which sometimes caused me to miss work due to flair ups from the work environment) and one less day in what can be an overwhelming environment for my MS.  There are other Verizon stores that operates on four ten hour shifts for their employees so this should have been an easy request to approve.  Since other stores functioned this way, this should not have been considered unreasonable.  According to my manager at the time Steven Winn, the process of dealing with the Verizon and HR to get this improved took a lot of time.  In regards to my second request, It is important to note that when I started at Verizon back in 2010 we were to dress in business clothes and we wore our own clothing.  This provided me the option to select the materials and fabrics that worked best for my body and my disability, looking back I had MS and its symptoms since roughly 2002.  At one point, Verizon switched to uniforms and we went through 3-4 different uniforms styles over the course of a few years. The first few uniform changes were not problematic as there were more options and fabrics to choose from.  This particular change with the hooded sweatshirt that I was denied removal of offered puffy down-like vests, a scratchy cotton t-shirt, and hooded sweatshirts.  There were not as many options and none of the materials were comfortable to my individual preferences to manage my MS and heat.  Below is the other original request I made and I was required to provide documentation again, yet a simple ask for the request should have been granted verbally.  I wrote a letter about my symptoms and why the new uniform change which was to denim jeans year-round exacerbated my MS symptoms due to heat.  I was told I needed a workplace agreement form, or a WPA as they call it, which according to the ADA should not have been necessary because by this point they were aware I had a disability and that it necessitated an accommodation.  I filled out the paperwork and took it to my doctor.  I also supplied the following information to make Verizon fully aware of how heat and my dysesthesia, which are chronic and often painful skin sensations that can interfere with daily work.  You will find the original email of my request to not wear jeans due to heat.  Keep in mind at this time the thick cotton hooded sweatshirt that I was denied removal of because as Verizon states "I failed to submit medical evidence to support these dress code accommodations," was not part of the dress code at this time.  This article supports plenty of evidence In regards to the effects of heat in MS and in my particular case.  As stated by the Enforcement Guidance on Reasonable Accommodations and undue hardships under the ADA, a modification of adjustment is "reasonable" if it "seems reasonable on it's face i.e. ordinarily or in the run of cases, this means it is "reasonable" if it appears to be "feasible or "plausible."  "An accommodation also must be effective in meeting the needs of the individual" that is covered by the ADA.

Requiring me to wear only denim material as part of the dress code conflicts with my multiple sclerosis symptoms. My symptoms include issues with cognition, heat sensitivity, pain, verbal fluency, processing incoming information and mental math. In addition to these symptoms I also experience peripheral neuropathy, restless leg syndrome, spasticity, migraines, muscle spasms, depth perception issues, coordination, dizziness, blurred vision/double vision, depression, anxiety, dysphagia, dysesthesia, fatigue, and sleep disorders. Many people who know me are aware that I most often wear a skirt, lightweight capri pants, or a dress with the approved sweater/blouse/hoodie. I wear the appropriate colors of black and gray. I specifically dress

8

## D. Statement of Claims and Supporting Facts

myself for the day while keeping my multiple sclerosis in mind. Heat is my enemy and can lead to a variety of worsening symptoms. Temporary worsening of symptoms can result from even a slight elevation in core body temperature (one-quarter to one-half of a degree). An elevated temperature further impairs the ability of a demyelinated nerve to conduct electrical impulses. The National Multiple Sclerosis Society recommends for sufferers of this disease to wear lightweight and breathable clothing, as do my MS physicians, Dr. Catherine Cavender and Dr. Tamara Miller. Some people try to manage the symptoms of dysesthesia/MS hug. This is one of the most painful symptoms, I feel a banding or girdling sensation throughout my body. The pressure and pain make it difficult to breath, to eat, or to even move in general. Dysesthesia results from the damage that multiple sclerosis causes to the nerves in the brain and spinal cord. MS impairs the normal transition of messages to and from the brain, making it difficult for the brain to interpret the signals it receives. In these situations the brain can respond with a sensation or mix of sensations that include squeezing, tingling, burning, itching, stabbing pains or an electric like shock feeling. As far as clothing is concerned, in order to lessen the discomfort of these symptoms, I prefer the black and gray lightweight skirts, lightweight pants, and dresses with the appropriate matching top. Some days I do wear jeans and a certain pair of boots. Usually I choose these boots (which are dark brown) when I am suffering from a bad day of restless leg syndrome. The pressure provided by the denim jean/boot combination does result in more heat, but some days it is me just choosing to placate one symptom over another. I know I need to prepare myself each day to manage my symptoms the best way that I can. One of many multiple sclerosis symptoms is heat and regulating body temperature. The feeling of thick heavy denim can actually impact my day. Being uncomfortable and getting hot at work leads to my worsening of cognitive symptoms such as concentration and memory. My mental math gets worse, my MS fatigue can set in, a migraine may start, and I can lose my balance/coordination. With my MS, I also suffer from Uhthoff's phenomenon, which is when a change in higher body temperature results in vision disturbances and often makes my other MS symptoms worse. This request is not specifically targeted to one job task, but a request for me to best manage my heat and sensation issues related to my multiple sclerosis. In the past two years, I have been learning how to keep my symptoms from flaring up and impacting my day. Wearing lightweight fabrics in skirts/capris (black and gray) help me to keep the heat away. I have been searching for months for a pair of black boots that accommodate my restless leg syndrome as much as my dark brown pair does, and I have yet to find any. The more comfortable and prepared I am each day, the better I perform. I have been wearing the lightweight fabrics in skirts/capris/and sometimes pants, since the day I was diagnosed with MS. I made it to Winner's Circle the last 4 years in a row and I am on track to make it again for 2017. I want to do my best for my company, managers, co-workers, and customers, and in doing so I need to be allowed to dress appropriately for my disability. There are many MS symptoms that I experience each day which are out of my control, dressing for my comfort in more lightweight materials in black and gray (which was in the previous dress code) should not be one of them.

Verizon Repeatedly Accommodated Ms. Roberts
I would like to refute that Verizon engaged in an interactive process to identify reasonable accommodations as they state.  As noted under the Reasonable Accommodation Issues of the Enforcement Guidance section 97, 32.  It covers the question if an employer has provided one

**D. Statement of Claims and Supporting Facts**

reasonable accommodation, does it have to provide additional reasonable accommodations requested by an individual with a disability?  The response to this is the "the duty to provide reasonable accommodation is an ongoing one.  Certain individuals require only one reasonable accommodation, while others may need one than one.  Still many others may need one reasonable accommodation for a period of time, and then at a later date, require another type of reasonable accommodation.  If an individual requests multiple reasonable accommodations, s/he is entitled only to those accommodations that are necessitated by a disability and that will provide an equal opportunity employment."  Although, Verizon highlights they accommodated switching to 4 ten hour shifts in 2017 and permitting my to not be required to wear jeans in 2018 in January of 2018, they did little to work with me in regards to a multitude of other verbally or written requested accommodations.  These issues should have not required continued documentation, as I had already provided multiple written forms of doctor's notes and WPA's and forms for my Multiple Sclerosis.  Verizon had documentation that I had MS, what my symptoms were, and how my disability impacted my work from the Intermittent FMLA documents, the WPA required for my 4 ten hour shifts, the WPA request to wear jeans and how I needed to dress for comfort as that was something I could control and it would help me to function better instead of overheating and having an exacerbation, this document that was approved in January of 2018 already included all of these details about heat and dressing for my comfort due to my disability.  It was unnecessary and I should have been covered by the ADA as there are situations in which an employer cannot ask for documentation in response to a reasonable accommodation.  According to section 8 of the Requestion Reasonable Accommodations section of the Reasonable Accommodation and Undue Hardship Under the ADA states that "an employer cannot ask for documentation when: 1. both the disability and the need for the reasonable accommodation are obvious (it was obvious that my MS is exacerbated by heat and removing my thick heavy hooded sweatshirt would be a reasonable in cooling off if I became too hot.)  or 2. The individual has already provided the employer with sufficient information to substantiate that s/he has an ADA disability and needs the reasonable accommodation requested."  The documentation provided for my previous dress code of not being required to wear jeans due to heat sensitivity should have been enough, but Verizon required documentation again.  It seemed that any time I requested anything I need doctor's to fill out a Workplace Agreement Form according to Verizon.  The ADA is different, and a Workplace Agreement should not have been required for every little request I made that was reasonable, yet I was forced to consistently fill out their medical forms with my MS specialist that takes months to get in to see.  According to the ADA, in regards to reasonable accommodation requests needing to be in writing, it states that requests do not need to be in writing, but the employer may ask the individual to fill out a form or submit the request in written form, but the employer cannot ignore the initial request.  Verizon is at fault here as they continuously ignored my requests and did not engage with me except to tell me to fill out the WPA and then they would work with me.  They ignored my request despite knowing about my MS when they should have worked with me regardless of if I had the WPA filled out by my doctor again.  On March 14, 2018 Karlina Morine of HR responded to my email and stated that "You have requested accommodations to assist you, however, I have not received a completed WPA to proceed with that process.  Please get back to me so we can provide the appropriate support you need to be successful."  This clearly shows that they ignored my initial request and

**D. Statement of Claims and Supporting Facts**

would only attempt to accommodate my disability (which was already proven) until I returned to the doctor and completed more paperwork with my neurologist.  They caused undue stress and duress for me and I felt like I was being attacked for having a disability.  The main request that I never received accommodation for is the removal of my Verizon hooded sweatshirt when I got over heated at work.  As mentioned earlier, we had 3-4 dress code changes fairly rapidly.  The last dress code that I was required to wear was a black thick hooded sweatshirt and it was required year round, regardless of it was summer or not.  As many know heat is the enemy to the majority of those living with Multiple Sclerosis.  It is actually notated in the same article I continue to reference, under Types of Reasonable Accommodations Related To Job Performance, that " An employee with a disability may need leave for a number of reasons related to the disability, including, but not limited to: "avoiding temporary adverse conditions in the work environment (for example, an air-conditioning breakdown causing unusually warm temperatures that could seriously harm an employee with Multiple Sclerosis)." I requested the ability to remove my sweatshirt temporarily multiple times and was denied the ability to accommodate my MS so that I could properly perform my job functions.  This is a reasonable request for one living with MS and I had already been required to provide documentation for my dress code when I received approval for my jeans and heat related issues in January of 2018, a letter about how I dress and what fabrics/articles of clothing work for me was included.  Verizon purposely made me suffer from the heat and on many occasions, it impacted my thinking, speaking, and job performance.  What about this request causes Verizon undue hardship?  This costed Verizon nothing and allows me to live my life like someone without a disability.  When I originally started getting reprimanded for the temporary removal of my sweatshirt, I requested I be permitted to remove it as a reasonable accommodation.  Verizon again required I fill out another WPA with my doctor in order to permit the removal of it.  They discriminated against me and made me jump through hoops again to accomplish something that should have just been a discussion.  I dress myself each day according to my MS and there are certain fabric and fits that work for me in relation to my heat sensitivity and my dysesthesia which is the sensations I feel upon my skin which can be a feeling of pins and needles, tingling, numbness, burning sensations, and my skin flushing.  My skin burns or hurts due to these symptoms and this is the reason the t-shirt that Verizon notates "doesn't work for me."  The cotton is thick and scratchy and too tight in the sleeves that it irritates my skin sensations.  I have attached a few photos of what my skin can look like and you will see the redness and flushing that can occur and it should be evident why some items/fabrics/clothing thickness would make me uncomfortable.  I usually wore a dressier shirt in black or white under my hooded sweatshirt in the materials of modal, rayon, polyester, and are lightweight and more breathable as they accommodate my heat and skin sensations better than other materials (I have attached photos of the shirts I would wear so you can judge if they are reasonable or would cause the company an undue hardship).  Many symptoms of my MS are not in my control but dressing to my comfort and regulating my body temperature by removing my sweatshirt with an acceptable colored shirt beneath it should have been reasonable.  During the time of denial until I had a WPA, I was not provided the option of wearing past uniform shirts that were lighter and caused less issues with my MS heat and skin sensations.  I asked if I could wear a previous uniform shirt and I was told no, I have also attached photos of the past uniforms to show examples of what I was suggesting and to demonstrate the difference in materials).  There was no working together with Verizon to find a

**D. Statement of Claims and Supporting Facts**

reasonable accommodation without the WPA.  Verizon could have offered me a different shirt underneath that would work for my disability or they could have allowed me to wear an old uniform shirt, or they could have just allowed me to remove my sweater temporarily with my own shirt underneath, yet none of these were done.  There was no undue hardship or burden to Verizon.  Once the WPA was filled out and turned in I was denied by Verizon as my "physician didn't state anything indicating that you can't wear cotton.  The documentation stated that you need to wear lightweight fabrics, which is cotton.  Due to this, your workplace arrangement request is denied.  This means that while on the sales floor, you are expected to wear Verizon approved apparel."  I was told by Verizon HR that I could go back to my doctor and provide further documentation to remove my sweatshirt (which I have included photos of) if I wanted to be able to remove my sweatshirt on the sales floor.  Verizon made me unnecessarily provide documentation again and did not act--regardless of the need for paperwork to find a suitable solution to work with my disability in the meantime.  Despite Verizon's actions the ADA states that an employer cannot ask for documentation when 1. Both the disability and the need for reasonable accommodation are obvious or 2. The individual has already provided the employer with sufficient information to substantiate that she has a disability and needs the reasonable accommodation requested.  Verizon is discriminating against me based on my disability because I am forced to choose between performing and making sales on the sales floor like a person without a disability could do or being in the back where I can not make money so that I can cool off by removing my hooded sweatshirt temporarily so that I did not overheat.  Time and time again, I was forced to choose between my career/ability to make money and my health and addressing the needs of my disability.  My accolades show you that I was a fantastic employee and an extremely hard worker—I did not deserve this treatment when I had given so much to my company and it eventually led to quit.

Other requests that I made that were not granted were for a grabber so I could reach the top levels of the accessory wall and tall shelves in the inventory room.  I asked this to Steven Winn, and I was told he could not get me one because we were not a smart store and that I would need to fill out a WPA to get one.  This simple request that made sense due to my balance issues and was reasonable or feasible to others was denied unless I filled out a workplace agreement form.  I was to use a small circular step stool which did not provide much surface area and had nothing to hold on to if I lost my balance.  It was not worth fighting over and going to my doctor again for something so minor that I did not continue to fight on it.  Instead, I eventually brought in some salad tongs that looked like skeleton hands and would use those to push accessories to the end of the peg and hopefully catch it when it dropped.  I also requested a mat to stand on and a chair and never received the mat.  According to the ADA, "an employer should respond expeditiously to a request for a reasonable accommodation.  If the employer and the individual with a disability need to engage in an interactive process, this too should proceed as quickly as possible.  Similarly, the employer should act promptly to provide the reasonable accommodation.  Unnecessary delays can result in a violation of the ADA law."  After several months, I was given a roller chair if needed in the back corner of the store if I needed to sit, however, you should note it was in the rear of the store so sitting in it when waiting for customers could prevent me from getting sales as usually the people in front received sales first.  I was never given a mat to stand on when I was at the new Boulder location.  I had a reasonable request, had already proved I had a disability, and that I had a disability that necessitated a mat or carpeting due to my leg issues

**D. Statement of Claims and Supporting Facts**

and fatigue associated to my MS. I was there from February thru July and never received this
reasonable accommodation. I had mentioned it several times to managers, including Ericka
Angel, the Regional Manager, and was told that I should receive one when she saw the floors in
person. I also requested some sort of noise cancelling if Verizon chose to not end up installing
carpet at some point, the floors impacted customers and other sales representatives as well, not
only in regards to the pain from standing on them, but to noise level caused by the open ceiling
and concrete floors. The noise was an issue and Verizon management blamed the floors and
ceiling for the noise level. Noise is an issue with those with MS according to the article Noise
Sensitivity and Multiple Sclerosis: Hyperacusis can result from damage to parts of the brain from
MS by Julie Stachowiak, PhD, states "If you have multiple sclerosis and experience discomfort
in response to certain sound or volume frequencies, you might not have realized that these
symptoms may be caused by your disease. This condition, called hyperacusis can be among the
subtle effects of MS. This sound sensitivity can interfere with your ability to concentrate,
socialize, or even sleep." In the article, Do Noise and Crowds Affect You More with MS, they
state "while others simply hear kids playing or dogs barking, sounds become shockingly
amplified to many with MS. It becomes a rumbling thunder of chaos that soon manifests into a
sensation of electricity darting up and down the spine, ringing in the ears, stress, and tightened
muscles." The author later states "keeping myself at a comfortable temperature is important.
Hot and cold temperatures can adversely affect MS, so combining overheating with loud noise
and crowds can make any situation unbearable." For the issue of the noise level, I was instructed
to carry around a decibel meter on my phone and take a screenshot when it got loud. I was
expected to pause what I was doing and take a screenshot to provide evidence that the noise was
problematic for my MS. I used the app on my phone and tracked the decibels and then sent them
to management. I have included photos of the screenshots and a text thread from July 6th when I
texted my manager Phil Gibson to show him the current levels. Some of the noise levels were in
the high 60's and 70's. This accommodation was originally brought up when I moved to the
store in February, yet I was still taking screenshots to provide evidence that I needed a
reasonable accommodation in July. This once again was reasonable; my ADA disability was
known to Verizon and it is a plausible accommodation for one living with Multiple Sclerosis as it
can aggravate my thinking and processing. If this request did cause undue hardship to my
employer, Verizon still never came back to me with an open dialogue and provide other less
expensive or burdensome accommodation for the noise. I went nearly 6 months without anyone
accommodating or addressing the noise other than asking me to track the levels with a decibel
meter and then send them to management. I should have been able to have an equal opportunity
to enjoy the benefits and privileges of employment that employees without disabilities enjoy, yet
I was constantly fighting to get my basic needs for my disability accommodated. An employee
without a disability would not have had to endure this treatment, nor would they need to spend
their days off writing papers, researching cases and evidence to validate their claims about their
disability, or visiting doctors that could take up to 3 hours out of my day off to go and visit to
obtain the documentation required for another reasonable request.

At No Time Did Ms. Roberts Complain to Verizon that She Had Been Discriminated Against
On February 27, 2018 I wrote an email about concerns regarding my disability to HR and my
District Manager Brett Whipple as my concerns were not being addressed by my General

**D. Statement of Claims and Supporting Facts**

Manager Clint Van Dyne. As referenced by Verizon, I began reporting to manager Clint around January 10th 2018 and then transferred to the new Boulder store location that was being built, as Verizon's lease was up on the current building on or about February 25th 2018. I have submitted photos of the old Boulder on 28th St. and the store design and layout and that of the new store which was located at 2700 Arapahoe. You will notice the differences including the concrete floors, the minimal seating for customers, the harsh lighting, and open warehouse style ceiling that exacerbated the noise levels. The email I sent covering a multitude of concerns in regards to the vast amount of changes and the managerial ADA communication requests that were not being met. Interestingly this was written just two days after moving store locations. I will include it for you so you can see how much I tried to work with my manager and how he treated me in return. He embarrassed me and mocked me and did not work with me to manage me as I needed for my disability. My requests were reasonable, and I kept an open dialogue or attempted to with my manager, he violated the law which states under Requesting Reasonable Accommodation section 6 "failure by the employer to initiate or participate in an informal dialogue with the individual after receiving a request for a reasonable accommodation could result in liability for failure to provide a reasonable accommodation."

February 27th 2018
Hello Karlina and Brett,

I am writing to you in regards to the lack of communication and accommodations by my manager Clint. I sat him down in the first few days he was in the store and went over my self assessment as the National Multiple Sclerosis Society and the ADA suggest. I spent over a week cataloging my symptoms and how they impact my performance at work. I essentially provided my managers with a guide of how I have adapted and what adjustments I need (such as mental math, auditory recall, how I learn.) I spent this time cataloging my deficiencies. I poured my heart out and it was very personal and difficult to do. I spent all this time researching the best way to communicate my symptoms and in the midst of it I found things that made me sad. I read about how cognition is the number one reason people with MS leave the job force. I learned that people that look like me (normal) are the ones that have the most cognitive impairment. I have all of these thoughts and concerns now swirling in my brain...I did this so I can perform my best for my company.

According to the ADA, I am not even required to put accommodations in writing, yet I did (so it could be referenced if needed.) One of the challenges I have is change and being prepared for new things and what is coming next. Clint has not spoken to me about any changes going on here in Boulder and there are a lot! He has not sat down and talked to me since that initial visit to go over my MS. Despite covering these things with Clint, the first two meetings involved mental math. He also announced rapid changes without warning so I sat their crying in front of my peers. I feel like he listened for that one 15 minute conversation and then has disregarded everything we went over. This hurts, I did this to benefit my company, and it feels like he just disrespected me. He still has not spoken to me or addressed my concerns. Kristin McCarty is really the only one that is attentive to my needs and methods of learning. Kristin does everything around here, she is the one that supports the store when you have issues like I do (four of us have

14

medical issues.)

## D. Statement of Claims and Supporting Facts

I am not asking for unreasonable accommodations.  If you aren't aware I have made Winner's
Circle for 2013, 2014, 2015, 2016, and 2017.  Despite my challenges, I was ranked #3 in the
district and #25 in the territory for 2017.  I have been using my FMLA more frequently as Clint
is not giving me the support that I need.  I now stand on a concrete floor each day with my
restless legs.  I spent the past 2 days not being able to walk, in part because of the floor.  I know
there were plenty of manager calls about the new store.  It surprises me that no one said anything
about the need for carpet/padding for myself, as well as, a few other co-workers that have
medical conditions.

Kristin has asked Clint to talk to me three times already and he has not.  I have asked for basic
accommodations due to my disability and I can not seem to get this store manager to care.  One
day he actually mocked me, I had worked a 12 hour day due to a morning meeting.  He asked if I
would be the one staying to count the drawers.  I responded with "no, I have worked a 12 hour
day."  His response was "for what it is worth I came in an hour earlier than you."

In order to perform my best, I need someone that will communicate and value me.  My disease is
chronic, and it is worsening, the lack of support Clint has shown only increases my flair ups.  I
don't have support or leadership and I need that.  I try to come to work each morning and let the
managers know how I am feeling so they are aware.  Communication is key and belittling me
and ignoring my disability is not acceptable.  I included the information that I have provided to
my managers which goes into more detail about my MS and how I have adapted over these past
few years in the writing below.

Verizon states I mention nothing about his behaviors being discriminatory, yet this goes to show
you how I felt and I mention how he embarrassed me, that he belittled me, and ignored my
disability.  I went out of my way to communicate and share the managerial styles I prefer, and
this is how I was treated.  On February 28th 2018 I met with HR to discuss my concerns and I
was once again informed that I would need a completed WPA form in regards to my ADA
related request to coach and manage me in certain ways.  They would not take any action until I
completed the WPA, I did not have a doctor's appointment until April, so I could not get their
documentation immediately.  ADA states under Reasonable Accommodations Related to the
Benefits and Privileges of Employment that employers must have "equal access to information
communicated in the workplace."  I highlight above how I requested mental math to not be
performed with me in morning meetings and that I need to learn by writing and to pull me aside
to work with me on processing this information in that way that works for my disability.  I even
state below the effects of processing and mental math and the embarrassment they can cause me,
"it does embarrass me and makes me feel vulnerable when I stress and cry in front of my co-
workers as a result of my processing speed." This shows how he disregarded my requests and
embarrassed me in front of all of my peers.  The requests I made were nothing out of the
ordinary, it was just tailoring the way you communicate and basically coach anyone to their
needs and learning style, but Verizon turned it in to a huge ordeal, something that was not an

15

**D. Statement of Claims and Supporting Facts**

issue with my past managers.  In my nearly 9 years at Verizon Wireless, I worked at 5 different store locations with many different managers and performed in the top 10% of sales representatives for 5 years straight 2013, 2014, 2015, 2016, 2017.  I was a top performer and made the company a lot of money in my time there.  Despite my MS, I did not have a history of performance issues.  You will notice in one of the referenced photos February 20th 2018 there is a photo which shows the store sales leaders for the prior month, I am featured in 2 of six spots for my sales in Pull Through and Business Adds for the month of January 2018.  When manger Clint Van Dyne took over and there was a huge change to my environment and management. I do not process change well as part of my disability and can be overwhelmed by change and processing speed which I had previously referenced for Verizon.  Processing change is a part of MS and cognitive function.  The National MS society states in their Cognitive Changes article "more than half of all people with MS will develop problems with cognition.  These functions noted by them include, "information processing (dealing with information gathered by the five senses), memory (acquiring, retaining, and retrieving new information), attention and concentration (particularly divided attention), executive functions (planning and prioritizing), visuospatial functions (visual perception and constructional abilities), verbal fluency (word finding)."  In the Journal o f Neurology, Neurosurgery, and Psychiatry there is an study on the speed of information processing as a key deficit in Multiple Sclerosis and it finds that "patients with multiple sclerosis were found to have significantly slower speed of information processing relative healthy controls, irrespective of the modality of stimulus presentation (auditory or visual)."  This finding also reported that when given an adequate amount of time to process information, however, the patients performed similarly to controls."  I also deal with sensory issues with regards to noise and lighting.  I suffer from restless legs and consistently have a feeling of pins and needles from my elbows through my hands and from my knees through my feet.  My MS is also exacerbated by heat, according to Making Your Cold Sensitivites Manageable "more than 60 to 80% of individuals living with MS will have ill effects from the heat.  Heat can cause an increase in any of the symptoms you are currently experiencing from your MS or bring new symptoms to the surface."  Heat causes a "pseudo-exacerbation which as a result "you can feel weaker, have more sensory symptoms, feel more fatigued, or have changes in your vision, all of which can significantly affect how you function.  These few symptoms highlighted here should be used in support of the lack of accommodation to my communication and management style and the changes that were taking place at this time.   Manager change from Steven Winn to Clint Van Dyne in January 2018, movement of stores on February 26th 2018 and the adaptation to the change of store and its' facilities/environment.  Under the General Principles section of the Reasonable Accommodation Enforcement Guidance, Reasonable accommodations that an employer may have to provide unless they can show undue hardship to the company include, "making existing features accessible, job restructuring, part-time of modified work schedules, acquiring or modifying equipment, changing tests, training materials, or policies, providing readers or interpreters, and reassignment to a vacant positions."
Verizon states when I emailed them again it was on March 10th and I had not returned my WPA for my coaching style requests which were already evident and documented, this had not been returned because I had yet to visit my specialist.  I had contacted HR again as I had been threatened of getting written up.  The following email ensued as I had expressed concerns that I was having issues with my MS and changes and was not receiving the support I needed.  I was

**D. Statement of Claims and Supporting Facts**

being held accountable and told I would get written up when I had been fighting for months to get the support I needed.  Verizon claims they found nothing on their investigation into the way Clint Van Dyne treated me and that I just preferred my former manager's management style over his.  He discriminated against me and my disability which was covered by the ADA.  I feel he was coming for me and threatening a write up in retaliation for me going to HR due to his lack of communication and the reasonable accommodation needs in coaching/managerial style.

March 10th 2018
Hello Karlina,
I was informed today that I did not meet my BETR commitments for the month of February and that I would be put on a warning this month if I do not perform.  I failed one observation out of 4 observations last month.  I made sure that I communicated my cognitive issues and my slow processing due to my MS to our store managers.  The lack of support from my new store manager, the switching of stores, the design of the new store (which impacts my MS with noise/hard flooring), and the loss of manager Phil to paternity leave are all major changes.  If I am being held to this standard, despite all the changes and lack of support I have been through, what happens to my general manger that did not support me for the past two months?  Does he not have some responsibility in my performance?

Response March 14th 2018
Hi Wendy,

For behavioral coaching and the success management process, all of your managers have responsibility in your performance.

Do you have an specific examples of how your GM has not supported solely your performance the last two months? I did look through Drive to understand the performance support provided in February and there were observations and quick coaches done by all of your managers, so please share any specifics you have around just your GM.

I understand there have been several changes recently, however, we do have standard performance expectations for all Solutions Specialists. The success management process is based on your monthly commitments set with your manager at the beginning of the month, and then the percentage of achieved and not achieved observations throughout the month. In addition to any quick coaches, huddles, role plays, etc.

You have requested accommodations to assist you, however, I have not received a completed WPA to proceed with that process. Please get that back to me so we can provide the appropriate support you need to be successful.

Response March 16th 2018
It is very difficult to get in to see my neurologist to have the papers you want filled out.  I already gave you a list of accommodations back in January.  I covered them with each manager and copied you in on them.  I was not told in January that I needed a WPA for the basic learning accommodations listed below.  Part of being a manager is learning to manage different people and different learning styles.  Just because I have a disability you are requiring it in writing

**D. Statement of Claims and Supporting Facts**

(which I did).  I had very few issues with the previous managers at our Boulder location in regards to understanding me and learning how to help me do my best.  It should not be that complex, however, when the general manager doesn't talk to you for months and can't lead his managers, let alone the store, this is the result.  Steve, Kristin, Phillip, Erick, and Mick were all supportive and aware of the ways that I learn and perform.  Nothing was required in writing because they communicated, and we had an open dialogue.  I can tell you about multiple of my co-workers and the ways that they learn best, their work motivations, and the appropriate ways to coach them.  This is basic management that occurs in all corporations.  You can take the list I sent you and attach it to the WPA and send it to corporate.  It typically takes months to get an appointment with my neurologist.  I have an appointment in April, but I need (and have needed) accommodations regarding basic communication and management immediately.  I will include the information again for you.  You can send it off and I will wait for my doctor to have time to fill out my forms.

A key tool for dealing with my MS is being more up-front with other people about my MS.  By telling others, I am more up-front with myself--which in turn helps me to accept the hand that I have been dealt.  Many others have questioned why I want to share about my disability, like it is a weakness, or something to be ashamed of.  My sharing and being open and honest is not weak, it is actually a sign of strength!  Anytime that I look this disease in the face and say I am not ashamed, I gain a little more feeling of control.  When I am open about my symptoms (especially since you can't really see mine) I feel like a load has been taken off my back.

Before my diagnosis, I had heard of MS, but only really knew that it affected the brain and could result in wheelchairs and walkers.  Multiple sclerosis is a disease in which the immune system eats away at the protective covering of the nerves.  The damage to the nerves results in lesions or scarring that disrupts the brain and central nervous system.  The locations of the lesions in the brain and spinal cord coincide with the symptoms that each MS patient may experience. My particular case of MS can not really be seen.  Physically, "I look great," but for me it is my cognition that is most impacted.  Surprisingly, a person with almost no physical limitations such as myself, can have significant cognitive impairment, while a person who is quite disabled physically can be unaffected cognitively.

You can rest assured that I am still a hard worker and the same name that you have seen on the Winner's Circle list for the past 5 years!  My life is a little different now, but with adapting and working together I can perform just as well.  Looking back, I realize that I probably have had this cognitive challenge years prior to my diagnosis, and that I was coming up with my own work strategies and methods in order to adjust to what worked best for me.   I now recognize that the sooner my cognitive problems are identified, the easier it is to develop effective strategies to manage them!  I am not asking for preferential treatment, I am just requesting a few reasonable accommodations in order to do my best every day.

Things to know about my MS and how I adapt

Fatigue - I am tired a lot, even when I sleep well.  Not much we can do to manage this other than

**D. Statement of Claims and Supporting Facts**

to remind me that I probably made a cup of coffee 4-5 hours ago and forgot about it or to take my medication that keeps me awake

Dysphagia - one of my most annoying symptoms that customers may notice.  It has to do with swallowing, which in turn relates to all off my mouth and tongue numbness and tingling issues. I feel like I am tripping over my tongue when I speak.  My mouth also gets very dry or very wet. No real fix for this other than drinking something, sometimes chewing gum or a mint.  Once in a great while I may ask you to say something for me if my mouth isn't working well

Heat sensitivity - I can get hot very quickly and it sort of short circuits my brain so to speak.  I often wear skirts, lightweight pants, or dresses, as I can control my body temperature and I am most comfortable.  People with MS are told to wear lighter clothing as just minor temperature changes can lead to a worsening of symptoms.  You may notice I get flushed.  Removing my sweater or hoodie for a bit, drinking cold water, or going outside if it is cooler may help to some degree.  Jeans can often make me hot, but some days I wear them to placate my restless leg syndrome.

Restless Leg Syndrome - Happens most days and there is not much that can be done about it. My legs will twitch and pulse all day and all night.  I do not sleep well because of this, I take a medication for it, but the medication makes me sleepy.  Compression can give me a little bit of relief so some days I wear knee high boots and socks to help.  I use a weighted blanket at home to attempt to alleviate some of the leg issues when I sleep.  You may notice me trying to stretch my legs or rub my calf muscles as this is the main trouble area for me.  Since switching to concrete floors I have so much leg and knee pain that I can no longer go to the gym or ride my bike.

Blurred vision, Double vision, Vision loss - Happens often--no real fix other than squinting, pulling it up on the desktop, looking closer at my tablet, or asking someone to tell me what something says

Numbness - I typically experience a feeling of pins and needles, tingling, and numbness throughout my body.  My hands and forearms, as well as, my feet and legs from the knees down feel consistently numb. You may notice that I drop things from time to time.

MS Hug/Dysesthesia - unpleasant painful sensations throughout my chest and torso.  Probably the worst pain I have ever felt from my MS.  It feels like you are being squeezed to death by a boa constrictor.  It can be so painful that I give up eating and drinking.  I try to avoid this at all costs, nothing can really be done at work for it, but I recognize it as a really bad sign that my MS may be flaring up or getting ready to do so.

Migraines - These don't occur all too frequently anymore.  I was originally misdiagnosed as just having migraines.  I have had them for years and they can be brought on by stress, mentally taxing tasks, lack of food, noise, bright lights, or just plain sensory overload.  I have migraine medication that I can take if I catch one coming on quick enough.

**D. Statement of Claims and Supporting Facts**

Depression/Anxiety - Something I deal with daily.  Depression is linked to the location of lesions on the MRI.  I have multiple lesions in the frontal lobe which is where cognition and depression reside.  Part of my depression is related to the lesions and part is just related to me being an overly caring worrier that hates messing up and only wants to do my best!  Anxiety was recently described to me like this...with MS you have very little control over when you feel well and when you don't.  I am anxious and worry because I do not know how my brain or my body will act or respond to things!  It is also depressing to look at how I look and feel now versus how I was prior to the major brain damage.  I had to fight for my diagnosis, and it brings me a lot of anger.  I knew something was wrong and I was left untreated, I often think what would my life be like if I was treated immediately?

In addition, if Verizon was aware two months ago (which they must have been) that there was going to be no carpeting or padding at this location I could have started the WPA process back then so that I was not in so much physical pain now.  I could have scheduled an appointment months ago to cover this issue, however, it seems Verizon is not concerned with those of us that have disabilities.

In regards to my BETR commitments it was not made clear to me that I would be judged/passed/failed on mentioning them every time.  I took my open conversation with Starr as "how can I get better" what are some "ideas I can try" things that I could work on.  I was honestly brain storming and trying to come up with new tactics.  I ended up choosing more difficult things as I did not understand this.  I failed the one BETR as the guest had been in recently and she immediately told me she was going to be trading in her phone and her husbands as soon as she walked in the store.  The guest already new the trade in values and wanted it applied to the bill, so I did not press her to activate it for someone else.

As for my general manager his way of managing was to ignore me and to ignore my conditions.  I have been told that "Clint has had a lot of changes going on and that he is learning" per Brett and himself.  I have a lot of changes going on and I have a disease that impacts my cognitive thinking and information processing, he gets an excuse, yet I do not.  Up until I sent you the email regarding my medical concerns, he did not coach me, he did not offer to help me when I was clearing not speaking well, he was/is not often on the floor.  He was/is primarily in the office and does not check in on me throughout the day.  Him being in the office also led to more multitasking for me as we frequently did not have a greeter.  I would have to stop assisting a guest (which at the time was not good for me cognitively) and check people in.  He continued to do mental math when I asked for pen and paper and I was told by management that it (mental math) was a requirement.  I explained that I need direction and need to focus on just a couple things at a time or I will get overwhelmed.  We never had a discussion on this.  I requested he speak with me on changes.  Little to no communication there, no information on the lack of carpet, the system updates, promo changes (until Kristin reminded him to cover them), no strategizing on how to sell in the new store, no game plan.  He has been negative, where I need positivity, my life is hard enough right now.  I need to feel like my managers actually care and want me to perform my best.  I have obviously performed well enough to be in the top 10% of representatives for 5 years in a row.  This should show you that I have "performed consistently" for 5 years straight.  Threatening to write me up for one month when I was unsupported by my

**D. Statement of Claims and Supporting Facts**

new general manager and was required to take time off the floor to pack and move store locations (which also exacerbated my MS) does not seem to be appropriate. If you chose to go that route, despite my disability, I believe that my general manager should receive the same documentation.

Discrimination and retaliation as a result of going to HR. I had not been written up for performance in the past and all of a sudden, I am threatened with a write up as a result of a failed commitment. I do not believe I had been written up for performance ever in my career at Verizon Wireless. I was amazing with my customers and consistently busy as a result. I had a good reputation and rapport with my customers which assisted me in my success. When inquiring about being written up on March 10th 2018 Karlina Morine from HR responded with "I understand there have been several changes recently, however, we do have standard performance expectations for all Solutions Specialists." Well the ADA has standards too and Verizon Wireless was not providing them to me or engaging in an open dialogue to find a solution that fit my needs in the meantime (even if they were to require additional paperwork) to address basic management and communication needs to accommodate my disability. They did not provide other solutions if my requests were deemed unreasonable or if they created an undue hardship for Verizon. I feel this write up was retaliation from manager Clint Van Dyne as I had gone to HR about his treatment towards me and his lack of disability accommodations, including communicating with me. I went from 2013 through to 2017 without write ups and performing high enough to be ranked in the top 10% of Retail Solutions Specialists, yet now--a month after I went to HR in regards to his failures to address my MS and his unacceptable behaviors I will be documented. Their behaviors were discriminatory, and this was a retaliation to me and my ADA requests. I reached out multiple times for assistance and was not provided what I needed to address my MS in the new store facilities and as a result of the changes and my processing speed. As mentioned above, the concerns to me included, but were not limited to the change in store general managers, the lack of communication with Clint Van Dyne, the new store location and a new way of selling in the new store, the store design which had open ceilings, concrete floors, harsh lighting, and little to no seating, and the worsening of my MS symptoms and health due to all the changes (some related specifically to the store design) and lack of support, and the loss of manager Phil Gibson to paternity leave. I was being held to Verizon's performance standards but, they assumed no responsibility in my needs as a person living with an ADA disability and the reasonable accommodations that I had requested. This was unfair and a reasonable person with or without a disability in my shoes would have felt the same way.

Ms. Roberts Cannot Show That Verizon Made Her Working Conditions So Interolerable That She Felt Compelled to Resign.
I have already documented the multiple reasonable accommodations that were not met, failed to have an open and interactive dialogue for suitable accommodations, or required additional documentation that was unnecessary, as I had already proven in documentation for my Intermittent FMLA starting on 8/1/2016 (which was required to be renewed each year), the paperwork for the request to shift my schedule to four ten hour shifts, and the paperwork submitted in regards to MS symptoms in relation to heat regulation and clothing types/styles that permitted me to not be required to wear denim. It was obvious I had an ADA disability of

21

**D. Statement of Claims and Supporting Facts**

Multiple Sclerosis and that is required reasonable accommodations unless it were to cause Verizon an undue hardship.  Verizon states on page 2 of their claim that the company has a commitment "to removing barriers which may prevent qualified individuals from enjoying employment opportunities because of their disabilities."  They go on to say that "Verizon's policy also provides that it will make reasonable accommodations for employees with physical and mental impairments that will enable those employees to perform the essential functions of their jobs, so long as these accommodations do not cause undue hardship for Verizon."  In my time at Verizon, I requested several reasonable accommodations to remove the barriers that prevented me from enjoying my works place.  Requesting to be able to remove my sweatshirt when overheated due to my MS, for a grabber to appropriately reach things that did not involve climbing and balancing a top a small step stool, a request for a mat to stand on so that I did not suffer from joint pain and restless legs on a concrete floor, a request for an appropriate chair to sit on when I was fatigued, had balance issues, joint pain, or restless legs, and for some sort of noise cancelling as my MS is exacerbated by high noise levels would have led me to perform my essential job functions and not put such strain on my health.  I did not have the ability to enjoy my employment as those without disabilities as I was discriminated against and had to fight nearly every day to have my physical and mental impairments addressed.  The environment provided and fostered by Verizon and direct general manager Clint Van Dyne did not support my needs and did not respond to my requests—I was forced to work daily without many of the reasonable ADA accommodations requested.  I was subjected to a store environment that increased my MS symptoms, caused MS attacks, led me to the point that I could no longer walk nor would my legs work to drive as a result of the flooring among the other issues notated about the facilities of the new Boulder store.  You can see in the attached paperwork that I requested medical leave from 7/29/18-8/6/18 as I could not form sentences, find words, think clearly, was not able to sleep due to restless legs, had migraine headaches, and was not able to drive to work due to my leg issues.  This was a direct result of my lack of reasonable accommodations and manager Clint not working with me and communicating with me to maintain an interactive dialogue.  You can see in the emails I provided that I requested him to engage with me and he did not, I had to battle to get him or Verizon to address me and my disability.  It was a non-stop battle with Verizon and they made it so difficult for me that I requested a transfer to another store location.  I should not have been required to transfer to a different location, but I could no longer tolerate the situation that was occurring at the new Boulder store.  I requested a transfer to Ryan Foltz as he originally promoted me to sales representative back in the original Boulder store in 2010.  I had a good relationship with him and knew he would treat me better than Clint Van Dyne and his store location had carpet, chairs, less noise, and a more supportive management team.  I want to point out that this was a major sacrifice to me as I was giving up my years of customers that frequented me in Boulder.  Some of my customers drove to the new location for me, but I did see less sales and in essence a pay cut as I had to finally give and choose my health and wellness-over staying in Boulder where I preferred to be due to my tenure and time spent at that location where I had many repeat customers and referrals.  In transferring to the Westminster location, I was the new person and no longer had a frequent wait of customers requesting to work with me.  Anyone in their right mind would have seen the discrimination I went through.  Being mocked by my manager, being belittled, ignored, made to cry in front of my peers due to the way I learn and process (when I requested for information to not be communicated to me in this

**D. Statement of Claims and Supporting Facts**

manner), required to do mental math, not able to sit, forced to stand on concrete floors, subjected to noise levels that were beyond normal store levels, and essentially alienated due to my disability.  I had no one to go to or to support me, my general manager was not there for me so I went to HR and what I received in return was retaliation in the form of threatening to write me up by my management.  HR had multiple emails from me and refused to assist me until a WPA was filled out for each request.  My neurologist Tamara Miller is located roughly 45 minutes north of me and takes months to get an appointment with, as she is an MS specialist and there are not many of them in the area.  To give you an idea, prior to getting an appointment with an MS specialist I was on a 6-month waitlist for an appointment.  I was told nothing would be done to accommodate me until I had the WPA paperwork filled out by my neurologist.  Once I could get an appointment, which took months, I would need to drive the 45 min or more each way, pay for a doctor visit, recall and discuss all of my disabilities and the treatment I received from Verizon in regards to my MS and it broke my heart (this took roughly 3-4 hours out of my day off in addition to the time I needed to decompress from the stress and anxiety it brought me).  Mind you, this was all done on my days off so there was no break from the work I had to put in to getting an ADA protected accommodation.  I documented instances, emailed HR, spoke to my managers openly to educate them and keep an open dialogue, took time off the floor to research articles and evidence to prove why I needed an accommodation and in the meantime, I was losing out on sales to do these things…I would not call that equal treatment in comparison to someone working at Verizon that did not have a disability.  I gave everything to my company which is evident through my sales results and this was how I got treated in return.  My doctor and her medical assistant both told me to quit my job, I was a mess and was not treated right, my blood pressure was elevated, I kept having flair ups, and the paperwork I kept needing for each and everything which would then get denied seemed ridiculous to them as my reasonable accommodation requests were just that—reasonable for someone living with MS.  I was bullied by Verizon and felt I could no longer go to them.  The final incident for me was when Verizon denied me again for the right to remove my thick bulky hooded sweatshirt on the sales floor because my neurologist did not state that I could not wear cotton.  I was again discriminated against and made to go back to my doctor for new documentation.  I submitted multiple articles to Verizon covering heat and the impacts it has on MS with the paperwork that was completed by my doctor.  I find it interesting that out of all the reading material that I provided to Verizon on heat and MS when I submitted my WPA to remove the sweatshirt in question, Nicole Picinic, the consultant for Verizon, took out one sentence that cotton may be an approved material for MS as it is lightweight and breathable and included that in their claim, although disregarded anything else that was written to explain my basic ADA needs (I have attached the articles submitted for you to review).  The thick cotton hooded sweatshirt is not "lightweight and breathable" (any normal person would agree) and I explained my skin issues in relation to the t-shirt.  They clearly did not read any of the other portions of the articles to further explain my need to remove my sweatshirt and to regulate my temperature.  At this point Verizon was forcing me to quit.  I believe they wanted me to quit due to my MS, as well as, to the fact that I was a top performer and they needed to pay me a lot more money than your new hire or average representative.  If Verizon got me to quit they did not have to address my ADA disability or pay me out as a top performer.  Verizon knew what they were doing, and I could not fight them any more physically or emotionally.  They plain and simply exhausted me and wore me out.  I was

**D. Statement of Claims and Supporting Facts**

told by many people including my neurologist Tamara Miller and my psychologist that it was not a healthy environment for me. I needed to put myself and my health first for a change and not my career with Verizon. I was seeing an increase in my MS activity and symptoms due to Verizon and I could no longer tolerate it. In fear of retaliation, yet again, I stated I was resigning to pursue other career opportunities and did not tell them I was planning on contacting the EEOC and filing a disability claim. By this point, it was a hostile work environment, and I was uncomfortable discussing that with them at the time. On one of my last days in the store, manager Brett Whipple spoke to me and I told him "I couldn't fight them (Verizon) anymore and that they did not accommodate my MS appropriately so I would be going to another company where they would appreciate my hard work and treat me better than Verizon had treated me." He stated that "Verizon did everything to accommodate me, including transfer me to Westminster," through my documentation and emails it is evident that this was a lie.

Discussion:
Ms. Roberts Cannot Provide Any Direct Evidence of Discrimination On The Basis Of Her Disability
In my response, I have already provided many pieces of direct evidence of discrimination on the basis of my disability. I have additional information that has not been included here including from past witnesses including my former manager, former co-workers, and customers.

Ms. Roberts Cannot Establish a Prima Facie Case of Disability Discrimination Based on Failure to Accommodate
According to Verizon's Statement, "To establish a prima facie case of failure to accommodate under the ADA, an employee has the burden of proof that" 1. She is a qualified individual with a disability. This is obvious with my work history and performance about that I was qualified to perform the job. 2. The employer was aware of her disability. My diagnosis and paperwork to prove I had MS was submitted upon diagnosis on 8/1/2016. Multiple statements and written paperwork were submitted over the years to confirm that I did have a disability that was permanent and covered by the ADA. There is no way in which Verizon can state I did not have a disability. 3. The employer failed to reasonably accommodate the disability. Verizon failed to accommodate me with the lack of the mats to stand on, the ability to control my heat and remove my hooded sweatshirt, I was not provided a grabber to reach things off tall accessory walls, I was not provided with appropriate communication styles for my disability. I asked for communication and an open dialogue and you will see that was not done. I requested no mental math and to do things with a pen and paper and the mental math continued until I was embarrassed and mocked in front of my co-workers. I asked for some form of noise cancelation and told to document the decibels on my phone to prove that noise was an issue. I tracked this for months and it was never addressed. I have text messages from tracking the noise in June and July of 2018, there was no open dialogue, just me tracking and sending them off to my manager. I should not have gone from February to July without my right to be accommodated as someone living with a disability and performing a job I was qualified to perform. I fought to have my basic rights met and despite being a top performer with an impeccable record they made my life so difficult I was forced to quit. I met the qualifications to establish Prima Facie so the burden of proof lies with Verizon. Verizon states that as soon as they heard that I needed an

24

**D. Statement of Claims and Supporting Facts**

accommodation they engaged in an interactive process with her to determine reasonable accommodations to meet her needs. There was no open dialogue with them, it was to fill out the WPA form and until that was done, they would not work with me. I tried to get a doctor's appointment so my doctor could provide information to you, however, the soonest appointment is August 31st 2021. I was not exaggerating that it takes a long time to get an appointment to prove I need a perfectly reasonable accommodation. I had already proven that I had a disability, and it was evident that I had a reasonable request, yet Verizon failed to make simple accommodations. In relation to the four 10 hour shifts they made me work over 10 hours and also did make me work 3 ten hour shifts in a row. You can see from the text thread to Phil Gibson that even though I was supposed to work 2 days on 1 off to rest and 2 on, they would change that around and, on some occasions, make me work 3 tens straight. You can also see from the one email we were required mandatory 12 hour shifts on iphone launch days. This led to MS flair ups, yes they did authorize the 4 ten's with 2 on 1 off 2 on, but they did not always stick to that which was a precaution for MS flairs.

Verizon states in their response that Verizon's policy provides that it will make reasonable accommodations for employees with physical and mental impairments that will enable those employees to perform the essential functions of their jobs, so long as those accommodations do not cause undue hardship for Verizon. In response to Verizon, I would like to know what undue hardship they would have incurred from me removing my hooded sweatshirt to cool off with a solid black dress shirt on underneath it? Was a grabber to reach things off high accessory walls too expensive for Verizon to afford? In addition, basic communication and understanding in how to manage and work with employees that learn in different manners costs nothing. Verizon had the duty of acting in good faith and they did not. Verizon sent me to Disneyland for being an ambassador of our Credo, they featured me 2 times on VZWeb highlighting my charity work with WorldVision and child sponsorship, they also nominated me to a pre-leadership development program. I worked so hard for Verizon and it only seems they wanted to use my "volunteer work and character" when it made them look good. When it came to my diagnosis and my own disability, they made my life so difficult to get any reasonable accommodation approved. I was not provided the same rights in the workplace to live and enjoy my work like any other person without a disability. Since getting sick in 2015 (when I was fighting to get diagnosed), I spend a good deal of my free time volunteering with MS organizations and riding my Bike to fundraise for those impacted by MS. I have been featured in magazines and newspapers for my mission and role in raising MS awareness. I did not have plans of ever leaving Verizon—I picked them as a career, not just a job. Unfortunately, as I witnessed and experienced myself, Verizon is not this amazing company that they claim to be. They made my life so difficult I had to quit in order to address my disability and the health concerns of myself and my doctors. Verizon forced me out and discriminated against me, I took a pay cut, lost wages, have gone through years of stress and anguish caused by them. As of 7/6/2011, Verizon and 24 of its subsidiaries, have the Largest ADA Settlement in EEOC History paying out $20 Million to settle their Nationwide EEOC Disability Suit.