IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02847-NRN

WENDY S. ROBERTS,

Plaintiff,

v.

VERIZON WIRELESS,

Defendant.

## ORDER ON
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. #62)

**N. REID NEUREITER**
**United States Magistrate Judge**

This employment discrimination case is before the Court for all purposes on the consent of the parties to magistrate judge jurisdiction (Dkt. #10) and an Order of Reference entered by Judge Christine M. Arguello on February 10, 2022. (Dkt. #29.) Now before the Court is Defendant Verizon Wireless's ("Defendant" or "Verizon") Motion for Summary Judgment. (Dkt. #62.) Plaintiff Wendy S. Roberts filed a response (Dkt. #69) and Verizon filed a reply. (Dkt. #73, with additional exhibits filed under restriction at Dkt. #75.) The Court heard argument on the subject motion (*see* Dkt. #77) and has taken judicial notice of the docket and considered the applicable Federal Rules of Civil Procedure and case law. Now, being fully informed and for the reasons discussed below, it is **ORDERED** that that the subject motion (Dkt. #62) be **GRANTED**.

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). A court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Furthermore, a judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter, but to determine if there is a genuine issue for trial. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

The moving party bears the initial responsibility of providing the court with the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations

contained in his complaint but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."); *see also Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1180 (10th Cir. 2002). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, i.e., the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005). However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52 (1986).

# BACKGROUND[1]

**Procedural History**

Ms. Roberts, proceeding pro se, initiated this case on October 22, 2021. (Dkt. #1.) In her Amended Complaint (Dkt. #24), she alleges that Verizon, her former employer, violated the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §§ 12101, et seq., by discriminating against her on the basis of her disability, multiple sclerosis ("MS"); by failing to make reasonable accommodations for her disability; and by retaliating against her for her accommodation requests.

Attorneys Andrew Schulman and Joseph Chase entered their appearances on Ms. Roberts' behalf on April 18, 2022. (Dkt. #45.) After the completion of discovery, the subject motion was filed on March 20, 2023. (Dkt. #62.) Verizon seeks summary judgment in its favor under Rule 56 of the Federal Rules of Civil Procedure because it contends that it provided reasonable accommodations and because Ms. Roberts suffered no adverse employment action.

**Verizon's Statement of Material Facts**

Unless otherwise noted, there is no genuine dispute as to the following material facts.[2]

Ms. Roberts began her employment with Verizon in January 2010, first working as a Customer Service Representative and later transitioning to a Solutions Specialist at various retail locations in the Denver-metro area, where she was responsible for overall

---

[1] All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

[2] Ms. Roberts admits the facts set forth in Verizon's Statement of Material Facts, but offers her own Statement of Additional Disputed Facts, discussed below.

4

customer service. (Dkt. #62 at 5, ¶ 13.) Ms. Roberts was diagnosed with MS in August 2016. (*Id.,* ¶ 14.)

Each Verizon store has a General Manager ("GM"), Assistant Managers, and a Human Resources ("HR") Business Partner who oversee the hourly and salary retail employees. (*Id.* at 3, ¶ 5.) During the relevant period, Ms. Roberts worked at a location in Boulder, Colorado, where her General Manager was Steve Winn and, when he resigned, Clint Van Dyne, and the HR Business Partner was Karlina Morine. (*Id.* at 5, ¶ 15.) On July 22, 2018, she requested to be transferred to a store in Westminster, where her GM was Ryan Foltz. (*Id.* at 6–7, ¶ 20.)

Verizon has policies in place prohibiting disability discrimination/retaliation and governing workplace accommodations. (*Id.* at 3, ¶¶ 2–3.) If a Verizon employee seeks an accommodation for a disability, the Retail Manager or HR Business Partner gives the employee a four-page Workplace Arrangement Request Form ("WPA") to complete. (*Id.* at 4, ¶ 8.) The employee fills out the first page and signs the medical release on the second; the final two pages are to be completed by the employee's medical provider. (*Id.,* ¶ 9.) Once complete, the WPA is sent to the Verizon Accommodations ("VA") Team, which reviews the request and determines whether it is supported by the medical documentation. (*Id.,* ¶¶ 10–11.) If the VA Team denies an accommodation due to a lack of supporting medical documentation, Verizon allows employees to reapply for the accommodation with corrected or additional medical documentation. (*Id.,* ¶ 12.) The VA Team member assigned to the Boulder location was Kim Kuhlthau. (*Id.* at 5, ¶ 15.)

Ms. Roberts made her first request for a workplace accommodation in February 2017. (*Id.,* ¶ 17.) She asked to work four ten-hour shifts per week. (*Id.*) Ms. Roberts

5

completed the WPA and her accommodation was approved by the VA Team. (*Id.* at 6, ¶ 17.)

She submitted a second accommodation request on January 15, 2018, asking to wear non-denim clothing.[3] (*Id.*, ¶ 18.) In the WPA, her medical provider stated, "Wendy should be permitted to wear business attire that meets all other guidelines but is not denim." (*Id.*) This request was also approved. (*Id.*) However, Ms. Roberts began to refuse to wear approved Verizon attire. (*Id.*, ¶ 19.)

On September 1, 2018, Ms. Roberts sent Ms. Morine two more WPAs asking for a mat to stand on and a chair to sit in, along with a dress code accommodation to wear or remove her sweater as needed to manage her heat. (*Id.* at 7, ¶ 21.) Between the time she signed the WPAs and emailed them, Ms. Roberts transferred to the Westminster location, after which she no longer needed the mat and chair, just the clothing accommodation. (*Id.*, ¶ 22.) The accommodation request was granted insofar as Ms. Roberts was told she could take off her sweater as long as she wore a Verizon-branded T-shirt under it. (*Id.* at 8, ¶ 24.)

Ms. Roberts informed Ms. Morine over the phone that the fabric of the company shirts would not work with her medical condition. (*Id.*, ¶ 25.) Verizon confirmed that its T-shirts were made of cotton, and Ms. Roberts' accommodation request was denied because she had not requested to not wear cotton and had no documentation that cotton was an unsuitable fabric. (*Id.* at 8–9, ¶¶ 26–28.) She was invited to submit updated medical documentation, but she did not do so. (*Id.* at 9, ¶ 28.)

---

[3] Verizon's retail store employees are required to wear a Verizon uniform, which in 2017 and 2018 included a jean bottom, a Verizon-branded cotton T-shirt, and, if needed, a Verizon sweater. (Dkt. #62 at 3, ¶ 6.)

6

Ms. Roberts began to look for new employment and accepted a position with Holland Residential on September 24, 2018. (*Id.*, ¶¶ 29–30.) She submitted a letter of resignation to Verizon on September 28, 2018, which made no mention of her disability, and she declined her GM's request that she stay at Verizon. (*Id.*, ¶¶ 32–33.)

Ms. Roberts started at Holland Residential making $16.75 per hour, plus commission. (*Id.* at 10, ¶ 35.) She had been making $18.28 per hour at Verizon.

**Ms. Roberts' Statement of Additional Disputed Facts**

Ms. Roberts provides her own statement of disputed facts, most of which Verizon objects to and/or denies, primarily because they reference and rely on only her Amended Complaint, deposition testimony, and discovery responses. Verizon argues that Ms. Roberts' "facts" are therefore mostly statements or beliefs unsupported by objective evidence. It is true that a party opposing summary judgment cannot rely on the bare allegations in a pleading, their personal beliefs, or their conclusory assertions; they must come forward with evidence outside the pleadings sufficient to create a factual dispute with regard to the issue on which judgment is sought. Fed. R. Civ.P. 56(e); *Celotex*, 477 U.S. at 324. Therefore, conclusory allegations unsupported by specific evidence "will be insufficient to establish a genuine issue of fact." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990)). However, Rule 56(c)(1) provides that a party asserting that a fact cannot be or is genuinely disputed may cite to "particular parts of materials in the record, including depositions, documents . . . interrogatory answers, or other materials." In any event, Verizon's objections are noted and will be discussed in conjunction with Ms. Roberts' fact statements.

7

Ms. Roberts states that Verizon employees were expected to do mental math and that she sought an accommodation because MS affected her cognitive functioning. (Dkt. #69 at 2, ¶¶ 1–2.) Verizon concedes that on January 23, 2018, Ms. Roberts sent a long email about the symptoms and limitations caused by MS, which includes problems with math, but denies that it was a request for reasonable accommodations, noting that Ms. Roberts testified in her deposition that she did not consider the email a request for an accommodation but rather a description of how she needed to be coached as an employee. (Dkt. #73 at 3, ¶ 2.) Verizon also asserts it responded to the email by providing Ms. Roberts with a blank WPA that she did not complete. (*Id.*)

Ms. Roberts next states that she asked her regional manager, Ericka Angel, for a mat to stand on and a chair because the concrete floors of the Boulder location were difficult for her to stand on, but Ms. Angel told Ms. Roberts she would not receive the accommodation until she saw the floors in person. (Dkt. #69 at 2–3, ¶¶ 8–12.) She also complained about the level of noise at the new store, which exacerbated some of her MS symptoms. (*Id.* at 3, ¶ 17–18.) Ms. Roberts states that she was told to track the decibel level of the store. (*Id.* at 4, ¶ 22.)

Verizon counters that Ms. Roberts did not fill out a WPA for the floor mat, chair, and noise-cancelling accommodations, but nevertheless it did supply anti-fatigue mats for employees. (Dkt. #73 at 5, ¶ 10.) Verizon points out that Ms. Roberts admits that she did not submit a WPA regarding her need for a chair and mat until September 2018, and that at that time, she no longer needed those accommodations. (*Id.* at 5–6, ¶ 13.)

Finally, Ms. Roberts states that when Mr. Van Dyne became her manager at the Boulder location in early 2018, he threatened to write her up for complaining to HR,

8

began giving her business away to another employee, and gave her a negative mid-year review. (Dkt. #69 at 4–5, ¶¶ 28, 31–32.) Around this time, she asked to transfer to a store in Longmont, but was told reassignment was not an option. (*Id.* at 5, ¶ 33.) Verizon states that the only formal transfer Ms. Roberts requested was to the store in Westminster, which Verizon approved.

## ANALYSIS

Ms. Roberts brings claims under the ADA against Verizon for failure to accommodate, discrimination, and retaliation. The Court will address each in turn.

**Failure to Accommodate**

To establish a prima facie failure-to-accommodate claim, an employee must show "1) she was disabled, 2) she was otherwise qualified, 3) she requested a plausibly reasonable accommodation, and 4) the [employer] refused to accommodate her disability." *Aubrey v. Koppes*, 975 F.3d 995, 1005 (10th Cir. 2020). Failure-to-accommodate claims do not require a showing that the employer's actions were motivated by discriminatory animus, as "the failure to provide a reasonable accommodation to a qualified employee with a disability is inherently 'on the basis of the disability,' regardless of the employer's motivation." *Punt v. Kelly Servs.*, 862 F.3d 1040, 1048 (10th Cir. 2017) (quoting 42 U.S.C. § 12112(a)). Nor is an adverse employment action a requisite element of a failure-to-accommodate claim; "once an employee makes an adequate request for an accommodation, thereby putting the employer on notice, an employer's failure to offer a reasonable accommodation to an otherwise qualified disabled employee is unlawful discrimination, irrespective of whether the employer harbored invidious intent (or discriminatory animus) toward the employee

9

when the employer failed to act." *Exby-Stolley v. Bd. of Cnty. Comm'rs*, 979 F.3d 784, 797 (10th Cir. 2020) (internal citations omitted).

If the employee makes the requisite showing, the burden "shifts to the employer to present evidence either (1) conclusively rebutting one or more elements of plaintiff's prima facie case or (2) establishing an affirmative defense, such as undue hardship or one of the other affirmative defenses available to the employer." *Lincoln v. BMSF Railway Co.*, 900 F.3d 1166, 1204 (10th Cir. 2018) (internal quotations omitted).

As there is no dispute here that Ms. Roberts suffers from MS and is disabled, Verizon's summary judgment motion turns on whether Ms. Roberts requested plausibly reasonable accommodations that Verizon refused. Ms. Roberts cites three instances where she claims Verizon failed to accommodate her MS: (1) when it required her to do mental math; (2) when it subjected her to the noisy conditions of the Boulder Verizon location; and (3) when it refused her request for a mat and a centrally located chair. (Dkt. #69 at 8–9.) In making this argument, Ms. Roberts seems to abandon the claims in her Amended Complaint regarding her work schedule and dress code. In any case, the Court concludes that the evidence shows that either (1) Verizon accommodated Ms. Roberts' requests that were submitted through the company's workplace accommodation procedures, or (2) Ms. Roberts failed to engage in Verizon's interactive process.

The ADA's implementing regulations state that, in order to "determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the

disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3). "The interactive process requires the good faith participation of *both* the employer and employee." *Aubrey*, 975 F.3d at 1007.

Verizon has an accommodations process that requires an employee seeking a disability accommodation to submit a four-page WPA form that includes the employee's limitations, potential accommodations, and supporting medical documentation. While Ms. Roberts asserts in her Amended Complaint that she should not have to complete and submit a WPA to get her accommodations, she does not challenge the fairness or sufficiency of this interactive process in her response brief.

On January 23, 2018, Ms. Roberts sent a five-page email to Mr. Van Dyne, Ms. Morine, and Kristin McCarty outlining the numerous symptoms and limitations caused by MS. (*See* Dkt. #69-3 at 1–6.) The parties disagree whether this was a request for an accommodation. Ms. Roberts claims it is, and this is supported by the final sentence of the third paragraph: "I am not asking for preferential treatment, I am just requesting a few reasonable accommodations in order to do my best every day." (*Id.* at 1.) Verizon responds that during her deposition, Ms. Roberts testified that she did not view this email as a request for an accommodation; rather, it was an attempt at being open about her symptoms to her managers to let them know how she needed to be "coached." (*See* Roberts Dep., Dkt. #73-2 at 36.)

Viewing the facts in the light most favorable to Ms. Roberts, the Court construes this email as an accommodation request. However, it is undisputed that after she received the email, Ms. Morine sent Ms. Roberts a blank WPA. This makes sense for several reasons. First, it complies with Verizon's accommodations process. Second,

11

Ms. Roberts' email covers twenty separate MS symptoms she experiences and discusses their various effects. Most of it appears purely informational; precisely what accommodations are being requested is not exactly clear. Finally, the email relays information that Ms. Roberts had gone over with her management team. It was reasonable for Verizon to request substantiating medical documentation in the form of a WPA.

Ms. Roberts did not complete and submit a WPA following the January 23, 2018 email. The Tenth Circuit has ruled an "employee's failure to provide medical information necessary to the interactive process precludes her from claiming that the employer violated the ADA by failing to provide reasonable accommodation." *Templeton v. Neodata Servs., Inc.*, 162 F.3d 617, 619 (10th Cir. 1998). "Courts in the Tenth Circuit applying the court's ruling in *Templeton* that '[a]n employer cannot be expected to propose reasonable accommodation absent critical information on the employee's medical condition and the limitations it imposes,' have dismissed ADA failure to accommodate claims where an employer made a reasonable request for information that an employee failed or refused to respond to." *Hurt v. Sch. Dist. No. 1 in Cnty. of Denver, Colo.*, No. 21-cv-00865-PAB-MEH, 2023 WL 3151859, at *7 (D. Colo. Mar. 27, 2023) (internal citation omitted) (citing cases). Ms. Roberts failed to provide the documentation needed for her requested accommodations, resulting in "a breakdown in the interactive process." *Id.* at *8 (quoting *Templeton*, 162 F.3d at 617).

Ms. Roberts followed up with another email on February 28, 2018, in which she complained about Mr. Van Dyne expecting her to do mental math and noted her issues with standing on the Boulder store's concrete floor. (*See* Dkt. #69-3 at 6–7.) Again, Ms.

Morine responded with a blank WP to fill out and a request to "please be specific and return to me by next Wednesday." (*Id.*) Ms. Roberts did not complete and return the form.

The parties dispute whether Ms. Roberts complained in person to Verizon managers about the level of noise at the Boulder location and lack of a mat to stand on and chair to sit on. Ms. Roberts did email Ms. Morine on March 10, 2018 complaining about "the design of the new store (which impacts my MS with noise/hard flooring)[.]" (Dkt. #73-15.) In response, Ms. Morine informed her, "You have requested accommodations to assist you, however, I have not received a completed WPA to proceed with that process. Please get back to me so we can provide the appropriate support you need to be successful." (*Id.*) It is undisputed that Ms. Roberts did not submit a WPA regarding any of these issues until September 2018, and at that time the only accommodation she actively sought was regarding her work uniform, which is no longer an issue in this case.

In short, the undisputed evidence shows that Verizon was consistently engaged in the interactive process. When the process "broke down," it was because Ms. Roberts failed to participate. And she cannot claim ignorance of how Verizon's procedures worked; in addition to being asked several times to submit WPAs, she sought and received an accommodation in February 2017 to change her work schedule (*see* Dkt. #62-8), and again in January 2018 to excuse her from wearing denim (*see* Dkt. #62-7). Moreover, the other accommodations she requested through the proper channels with appropriate documentation were likewise reviewed and granted. There is no basis for an ADA claim based on her contention that Verizon failed to engage in the interactive

process. Verizon is entitled to summary judgment on Ms. Roberts' failure-to-accommodate claim. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997) ("Liability simply cannot arise under the ADA when an employer does not obstruct an informal interactive process; makes reasonable efforts to communicate with the employee and provide accommodations based on the information it possesses; and the employee's actions cause a breakdown in the interactive process.").

**Discrimination and Retaliation**

Verizon argues that Ms. Roberts' discrimination and retaliation claims fail because Ms. Roberts has not shown that she suffered an adverse employment action. The Court agrees.

The ADA provides that no covered employer "shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To make out a prima facie case for discrimination under the ADA, Ms. Roberts must show that she "(1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer or prospective employer because of that disability." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1308 (10th Cir. 2017). In order to demonstrate "discrimination," a plaintiff generally must show that he has suffered an "adverse employment action because of the disability." *Mathews v. Denver Post*, 263 F.3d 1164, 1167 (10th Cir. 2001).

14

The ADA's retaliation statute provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). To establish a prima facie case of ADA retaliation, a plaintiff must prove that (1) he "engaged in a protected activity"; (2) he was "subjected to an adverse employment action subsequent to or contemporaneous with the protected activity"; and (3) there was "a causal connection between the protected activity and the adverse employment action." *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1186–87 (10th Cir. 2016). Opposition to an illegal employment practice, "rang[ing] from filing formal charges to complaining informally to supervisors," constitutes a protected activity. *Medina v. Income Support Div., N.M.*, 413 F.3d 1131, 1136 (10th Cir. 2005). The Tenth Circuit has recognized that a request for accommodation can constitute protected activity supporting a retaliation claim. *Foster*, 830 F.3d at 1188.

Thus, both claims require that Ms. Roberts show she suffered an adverse employment action to make a prima facie case. The Tenth Circuit has explained:

> a viable claim of discrimination in this context must still be predicated on an adverse employment action. The Tenth Circuit has "liberally define[d] the phrase 'adverse employment action,'" *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998), and takes "a case-by-case approach, examining the unique factors relevant to the situation at hand," *Hillig v. Rumsfeld*, 381 F.3d 1028, 1031 (10th Cir. 2004) (quoting *Sanchez*, 164 F.3d at 531) (internal quotation marks omitted). In general, "[o]nly 'acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits' will rise to the level of an adverse employment action." *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1222 (10th Cir. 2006) (quoting *Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1268 (10th Cir. 2005)); *accord Hillig*, 381 F.3d at 1032–33 (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S. Ct.

15

> 2257, 141 L. Ed. 2d 633 (1998)). However, the term "adverse employment action" is not necessarily "limited to such acts." *Hillig*, 381 F.3d at 1032–33; *see, e.g., id.* at 1031 (noting that an employer's action that causes "harm to future employment prospects," such as a negative job reference, can be considered an adverse employment action (quoting *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986–87 (10th Cir. 1996))). But although the term is not confined to, for example, "monetary losses in the form of wages or benefits [,] . . . 'a mere inconvenience or an alteration of job responsibilities'" does not constitute an "adverse employment action." *Sanchez*, 164 F.3d at 532 (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)). Accordingly, a plaintiff must show that the alleged adverse action caused more than "*de minimis* harm" to or a "*de minimis* impact" upon an employee's job opportunities or status. *Hillig*, 381 F.3d at 1033.

*E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1040 (10th Cir. 2011). The standard is an objective one: "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Hennagir v. Utah Dep't of Corr.*, 587 F.3d 1255, 1266 (10th Cir. 2009) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006)).

Here, Verizon did not terminate Ms. Roberts; she voluntarily resigned over entreaties by her manager to stay. Nor has she demonstrated that her salary or benefits were reduced, or her responsibilities significantly changed. Instead, she claims that she was forced to stand on concrete floors and to deal with high levels of noise at the Boulder store. But all employees at that location dealt with these conditions. And, as Verizon notes, Ms. Roberts could have sought accommodations through a WPA, which she did not do until she transferred to a different store.

Ms. Roberts also argues that she was told she could not transfer to a store in Longmont to shorten her driving commute to mitigate her restless leg issues. Verizon argues that Ms. Roberts has not demonstrated that she even made this transfer request, and notes that the formal transfer request she did make (to Westminster, which

involves a similar commute) was granted. The Court finds that even if Ms. Roberts was told she could not transfer to the Longmont Verizon, this did not "constitute a significant change in employment status." She does not even claim, much less show, that denying a purely lateral transfer had any effect on the material terms of her employment. Also, the mere fact that her commute was longer is plainly insufficient. *See Sanchez*, 164 F.3d at 532 (a teacher whose "purely lateral transfer" resulted only in a longer commute from five to forty minutes failed to establish a prima facie case of discrimination).

Finally, Ms. Roberts claims that Mr. Van Dyne discriminated and retaliated against her by giving her a negative review and giving her business clients to another employee. Verizon disputes both points, and the Court agrees insofar that the review does not appear to be very critical at all. Again, however, even if Ms. Roberts did receive a negative review and her clients were shifted, there is no evidence that this effected a significant change in her employment status. *See Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1226 (10th Cir. 2022) (recognizing that a performance improvement plan, standing alone, is not an adverse employment action). Indeed, Verizon has shown that Ms. Roberts made more money in June 2018 than she had in April.

Verizon also correctly notes that Ms. Roberts did not exhaust her administrative remedies as to her retaliation claim. The failure to mark a particular box on a charge of discrimination creates a presumption that the charging party is not asserting claims represented by that box. *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007). The presumption may be rebutted, however, if the text of the charge clearly sets forth the basis of the claim. *Id.* Ms. Roberts did not mark the box for retaliation, and the

narrative portion only refers to being subjected to disability discrimination based on the denial of her accommodations. (*See* Dkt. #73-1.) Summary judgment can also be granted in Verizon's favor on Ms. Robert's retaliation claim on this basis.[4]

Ms. Roberts has not established a prima facie case that Verizon discriminated or retaliated against her because of her MS. Accordingly, Verizon is entitled to summary judgment.

## CONCLUSION

In light of the foregoing, it is hereby **ORDERED** that Defendant Verizon Wireless's Motion for Summary Judgment (Dkt. #62) is **GRANTED.** Judgment shall enter in favor of Defendant Verizon Wireless and against Plaintiff Wendy S. Roberts. Ms. Roberts' Amended Complaint (Dkt. #24) is **DISMISSED WITH PREJUDICE**.

Date: September 13, 2023

_____
N. Reid Neureiter
United States Magistrate Judge

---

[4] "[A] plaintiff's failure to file an EEOC charge regarding a discrete employment incident merely permits the employer to raise an affirmative defense of failure to exhaust but does not bar a federal court from assuming jurisdiction over a claim." *Lincoln*, 900 F.3d at 1185. Verizon asserted this affirmative defense in its Answer. (*See* Dkt. #30 at 5.)